UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIBEL HAAG, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:17-CV-05403 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| COOK COUNTY and | ) | |
| THE OFFICE OF THE CHIEF JUDGE | ) | |
| OF THE CIRCUIT COURT OF COOK | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Maribel Haag brought this employment discrimination lawsuit against her for-mer employer, the Office of the Chief Judge of the Circuit Court of Cook County, as well as against Cook County for indemnification purposes.[1] Haag is a former em-ployee of the Cook County Adult Probation Department. R. 147, Def. OCJ Statement of Material Facts (DSOF) ¶ 4.[2] She alleges that, throughout 2016 and much of 2017,

---

[1] This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331.

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable. The Court will cite to the unredacted version of the De-fendant's Statement of Material Facts, which was filed under seal. The Plaintiff reproduced this document in full in her responsive Rule 56.1 Statement, effectively unsealing it. R. 155. Even if she had not, none of the redacted information in the sealed document (R. 145) meets the Seventh Circuit's high standard for sealing court filings. *Baxter International, Inc. v. Ab-bott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information re-quired by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret on appeal."); *see also Union Oil v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000).

the Probation Department discriminated against her based on race, national origin, gender, age, and disability; subjected her to a hostile work environment; and retaliated against her because she complained about the discrimination. *See* R. 74, Third Amended Complaint (for convenience's sake, this operative pleading will be referred to as the Complaint and, when cited, by the abbreviation "Compl."). Cook County and the Probation Department have both moved for summary judgment. R. 139, Cook County Motion; R. 140, Cook County Brief; R. 143, OCJ Motion; R. 144, OCJ Brief. For the reasons discussed in this Opinion, the Probation Department's motion is granted; Cook County's motion is terminated as unnecessary because it is only in the case for indemnification; and the case is dismissed in full.

## I. Background

In deciding Cook County's and the Probation Department's summary judgment motions, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Having said that, when Haag fails to present facts properly under Local Rule 56.1, the Court may deem the Defendants' facts to be admitted. *See Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011) (describing the importance of Local Rule 56.1 and the trial court's entitlement to rely on it). The facts below are undisputed unless otherwise noted.

Maribel Haag is a Puerto Rican woman who was 52 years old in July of 2020. DSOF ¶ 3.[3] She worked as a probation officer for the Cook County Adult Probation

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "DSOF" for the Office of the Chief Judge's Statement of Facts (R. 145); "PSOF" for Haag's

Department. DSOF ¶ 4.[4] At some point during her employment, Haag provided the human resources department with medical documentation of her post-traumatic stress disorder (PTSD) and other mental health issues. PSOF ¶ 123. As a probation officer, she managed a caseload of 110–170 supervisees, and her job duties included processing probation violations, accepting payments from supervisees, providing court letters, conducting home visits, and following up with service providers. DSOF ¶ 5. In April 2016, Haag was transferred to a different facility at 26th Street and California, where she remained a probation officer. DSOF ¶ 49. Throughout her employment with the Probation Department, Haag was a member of the AFSCME union, working under the terms of its Collective Bargaining Agreement with the Office of the Chief Judge. DSOF ¶ 6.

## A. January 13, 2016 Confrontation

Haag's problems with the Probation Department began in earnest in early 2016. The first allegedly discriminatory incident happened on January 13, 2016, at the Maywood Probation Department location, when Haag had a run-in with her former supervisor, Lisa Stawczyk. DSOF ¶¶ 9, 13. Stawczyk asked Haag not to help another probation officer with his caseload; the other probation officer was under

_____

responses to the Office of the Chief Judge's Statement of Fact *and* her additional statements of fact, which were filed together (R. 155); and "Def. Resp. PSOF" for the Office of the Chief Judge's response to Haag's Statement of Additional Facts (R. 164). Citations to the first 99 paragraphs of the PSOF are really citations to Haag's "Response" text to the corresponding paragraphs of the DSOF. Cook County has adopted the Office of the Chief Judge's Statement of Material Facts. R. 139, Cook County Mot. at 1.

[4]Haag's response admits this fact but adds that she was fired in January 2020. PSOF ¶ 4. Because this lawsuit was filed long before January 2020, the Court deems the fact to be admitted in full.

Stawczyk's supervision. DSOF ¶ 13. The parties' accounts of the incident diverge from here, although they agree that, as the conflict escalated, Stawczyk told Haag to accompany her to the office of Deputy Chief Probation Officer Rahsaan Moore, who was then Haag's supervisor. DSOF ¶¶ 10, 14. Haag insists that she had tried to walk away after Stawczyk told Haag not to help, and that the conversation escalated into a conflict only because Stawczyk followed Haag. PSOF ¶ 13. The parties agree that Haag refused to go to Moore's office, but Haag asserts that Moore was not in the office at that moment and that Stawczyk knew this. DSOF ¶ 14; PSOF ¶ 14. At some point during the confrontation, Haag called Stawczyk either a "bitch," according to Stawczyk and Moore (who had arrived on the scene), or a "witch," as Haag insists. DSOF ¶¶ 15, 17; PSOF ¶ 17. When Moore arrived on the scene, he saw that Haag was very upset, speaking loudly, and waving her arms in the air. DSOF ¶ 16.

Deputy Chief Moore imposed discipline on Haag for this incident in two ways. First, Moore sent Haag home for the second half of the workday. DSOF ¶ 19. Initially, Moore decided Haag should be docked for that half-day of pay. PSOF ¶ 113. But eventually Haag received the pay. DSOF ¶ 19. In February 2016, Moore issued Haag a written reprimand for her behavior on January 13. DSOF ¶ 26. No discipline was imposed on Stawczyk. PSOF ¶ 114. Haag was reprimanded, she believes, because her supervisors knew that Haag had a disability, specifically, anxiety. DSOF ¶ 34. She also believes that Stawczyk runs the Maywood office where the confrontation happened and that Stawczyk hates women. DSOF ¶ 30. Haag believes that male employees were not disciplined for equally bad behavior. DSOF ¶¶ 31–32. Specifically, she

says that on January 13, 2016, she heard Phil Marcantelli, the colleague she had been trying to help, call Stawczyk a "bitch" and say, "fuck you." PSOF ¶¶ 100, 101. The Probation Department counters that Haag only heard Marcantelli use the word on the phone with an unknown person. Def. Resp. PSOF ¶ 101.[5]

## B. Harassment and Transfer (Stawczyk)

After the January 13 incident, Haag complained to Human Resources that Stawczyk was harassing her. DSOF ¶ 35. HR Director Noreen Larson investigated the complaint. *Id.* According to Haag, Stawczyk continued to harass Haag between January 13, 2016 and April 11, 2016, which was the remainder of the time that they worked in the same facility. DSOF ¶¶ 36, 47–49. She says Stawczyk gave her threatening looks. *Id.* ¶ 36. Haag believes Stawcyk harassed Haag because of her race, age, and gender. *Id.* ¶¶ 37–40. She also alleges that Stawczyk knew of Haag's complaints against her. PSOF ¶ 105.[6]

On March 8, 2016, Haag met with Deputy Chief Moore, HR Director Larson, Assistant Chief Nicole Raymond, and a union representative to discuss the harassment allegations and Haag's request to transfer offices to get away from Stawczyk. DSOF. ¶¶ 41–42. On April 4, 2016, the Probation Department determined that

---

[5]The Probation Department also argues that because Haag sanitizes the expletives with the abbreviations "B" and "FU," she has not alleged what specific words he used. Def. Resp. PSOF ¶ 101. The Court applies common sense and reads those letters to stand for the expletives for which they usually stand.

[6]The Probation Department disputes many elements of this paragraph but agrees that Stawczyk knew about the complaint based on the January 13, 2016 incident. Def. Resp. PSOF ¶ 105.

Haag's harassment allegations were unfounded, but nevertheless the Department granted her request for a transfer. DSOF ¶¶ 43–44.[7]

At first, Haag requested to be transferred to Bridgeview but did not have enough seniority for this transfer under the terms of the Collective Bargaining Agreement, and she declined the next transfer offered her. DSOF ¶ 46. Eventually, the Probation Department transferred her to 26th and California, effective April 19, 2016. DSOF ¶ 49. Haag believes her transfer was motivated by her race, national origin, gender, and disability. DSOF ¶¶ 52, 54, 55.

### C. Reprimands and Harassment (Moore)

In June 2016, Haag's by-now former supervisor, Deputy Chief Moore, gave her a verbal reprimand because she had violated department policies in her cases at Maywood, including by failing to process 28 payments postmarked between January 4 and April 4, 2016. DSOF ¶¶ 57–58.[8] Haag believes that this discipline was motivated by her race and national origin because she does not believe that any other probation officers have been disciplined for those types of mistakes. DSOF ¶ 59. She also believes that Moore engaged in age discrimination because colleagues who were her age or older told her they had not been disciplined for failure to process money orders. DSOF ¶ 61. On top of that, Haag believes that sex discrimination played a role

---

[7]Haag points out, correctly, that witnesses were not interviewed before this determination was made. PSOF ¶ 35. But the record shows that, after Haag complained about this omission, Larson went back and conducted witness interviews, which did not change her assessment. DSOF ¶ 35; R. 145-13, Larson Memo.

[8]Haag says that she disagreed with the statements in the reprimand but provides no citation to the record either for her disagreement or to prove the inaccuracy of the reprimand. PSOF ¶ 58. The Court thus deems these facts admitted.

because Stawczyk was responsible for the reprimand and Stawczyk hates women. DSOF ¶ 62. Also, Haag believes that, because she had had anxiety attacks in the presence of supervisors, the discipline was also based on her disability. DSOF ¶ 64. Finally, Haag alleges that Moore harassed her between April 19 and June 8, 2016. *Id.*

### D. Isolation from Stawczyk

Post-transfer at 26th and California, Haag's problems continued. In July 2016, Haag requested that, as an accommodation for her anxiety, she not be required to attend any trainings with Stawczyk. DSOF ¶ 65. The Probation Department responded that it would try to keep the two apart—and HR Director Larson asked the training director to do just that—but could not guarantee zero contact. DSOF ¶¶ 66–67. Haag saw Stawczyk just once more, specifically at a September 19, 2016 training. DSOF ¶ 68. At that training, Haag stepped out for around 30 minutes to receive treatment for her anxiety and did not receive training credit for that time, although she was paid for it. DSOF ¶¶ 70–71; PSOF ¶ 70. Haag believes that she was docked the training time in retaliation for filing a discrimination complaint. DSOF ¶ 76.

### E. Discipline for Case Management

Another problem arose in September 2016. In that month, Haag was assigned a high-profile case. DSOF ¶ 80. Under Probation Department procedures, this triggered a partial audit of Haag's caseload by her then-supervisor, Althenia Palmer, which revealed several problems. DSOF ¶¶ 77, 78, 80 81.[9] Palmer gave Haag

---

[9]Haag disputes that department procedure required the audit and says that Palmer performed it at the direction of her own supervisor. PSOF ¶¶ 77–78, 80. The Probation

instructions on how to bring her problematic cases into compliance. DSOF ¶ 82. Assistant Chief Michael Sobieski also ordered Palmer to conduct a full case audit. DSOF ¶ 81. This audit revealed numerous problems in Haag's caseload management. DSOF ¶ 84; PSOF ¶ 84. Haag grieved the initial audit results, which resulted in Palmer issuing a revised audit report in early November 2016. PSOF ¶ 85. The revised report reduced the number of DNA collections that Haag missed from 33 down to 11. Palmer Dep. 46:15–19.

In August 2017, Haag was suspended for five days for the caseload negligence revealed by the audit. DSOF ¶ 84; PSOF ¶ 84. She believes that this suspension was discriminatory and retaliatory based on her race, national origin, age, gender, disability, and discrimination complaints. DSOF ¶¶ 87–92. Before the suspension, in mid-July 2017, Haag had received a letter saying she would be laid off effective August 18, 2017, due to budget concerns. DSOF ¶ 93. Ultimately, however, she was not laid off. DSOF ¶ 94.

---

Department cites Palmer's deposition, in which she explains that it is common department practice to partially audit an employee's cases when the probation officer has a high-profile case. R. 147-3, Palmer Dep. 51:21–52:12. Haag complains that the Probation Department has not produced a written record of that standard procedure. But Palmer's deposition testimony is evidence, and Haag does not cite to the evidentiary record to suggest these audits are *not* standard procedure. Nor are the circumstances so suspicious that a reasonable jury could just reject Palmer's testimony. Haag thus in effect has admitted this fact. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (explaining that "a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material"). Separately, the Opinion cites the unredacted version of Palmer's deposition, which was filed under seal, because the material does not meet the Seventh Circuit's stringent requirements for sealing filings. *See supra* at 1 n.3.

Moving forward to this lawsuit, the operative pleading is the Third Amended Complaint. R. 74, Compl. Both the Probation Department and Cook County have moved for summary judgment. R. 139, 143.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Cook County

Strictly speaking, it is not necessary to consider Cook County's motion, because the County is in the case solely for indemnification and the Probation Department is going to win its own summary judgment motion—so there is nothing to indemnify. To be clear, in the Order entered on April 16, 2019, the Court affirmed the indemnity-only status of Cook County. R. 106 at 5. As explained in the Order, at that point in the litigation, Haag agreed that Cook County was only in the case for purposes of indemnification. *Id.* (citing R. 91, Pl.'s Resp. Indiv. Defs.' Mot. Dismiss at 1-2 (citing Third Am. Compl. at 1 n.1, stating that these Defendants are only included "to preserve the record and for the purpose of appeal if necessary")); *see also* R. 59 (dismissing Counts One through Nine of the Seconded Amended Complaint as to the individual Defendants, and dismissing the Cook County Adult Probation Department); R. 69 ("[T]he Court and the parties agreed that Cook County is in the case solely as an alleged indemnitor").

The indemnity-only status of Cook County means that Haag's belated attempts to label the County as a joint employer must fail because that claim is not now in the case. As far as the Court can tell, no party has engaged in discovery on that issue—which is not surprising, given that the County was in the case only for indemnification. In any event, the County is right that it is *not* Haag's joint employer for purposes of discrimination laws. The Illinois Constitution and the governing Illinois statute establish the Adult Probation Department under the authority and supervision of the

Office of the Chief Judge. Ill. Const. Art. VI, § 7; 730 ILCS § 110. Haag's main argument for deeming the County her joint employer is that the County pays her salary. R. 150, Pl. Resp. to Cook Cty. at 4–5. The cases cited by Haag in support of this argument do not help. In one, the Seventh Circuit observed that whether someone is on payroll is "usually the *starting* point to determine whom the defendant employed during the relevant time period." *Smith v. Castaways Family Diner*, 453 F.3d 971, 974 (7th Cir. 2006) (emphasis added). So payroll status would only be the start of the analysis. In the other, the Supreme Court was only addressing how many employees an employer had at a given point in time; payroll status was not the exclusive proof of an employment relationship. *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207 (1997). Indeed, generally speaking, funding a payroll is not enough to make a government entity an employer for Title VII purposes. "In determining whether a business relationship is one of employee-employer, courts look to the economic realities of the relationship and the degree of control the employer exercises over the alleged employee." *Knight v. United Farm Bureau Mut. Ins. Co*, 950 F.2d 377, 380 (7th Cir. 1991) (cleaned up).[10] Haag has not demonstrated that Cook County exercised enough (or, really, any) control over her employment to be considered her employer. To repeat, all this is unnecessary because the County was not in the case for anything other than indemnification.

---

[10]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

On that note, if claims *had* remained against the Probation Department, and if the Probation Department ultimately lost the case, then the County almost surely would have been required to indemnify the Probation Department. Under Illinois law, Cook County funds the Office of the Chief Judge (and its Probation Department), so the County would be responsible for paying any judgment or settlement in this case. 730 ILCS § 110/13. This would have made the County a necessary party. The Seventh Circuit reached this same conclusion in *Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003). In that case, the Seventh Circuit cited an Illinois Supreme Court case that had answered the certified question of when and whether a county would be required to pay a judgment entered against a county sheriff's office; the answer was that, because the county funded the sheriff's office, it would also have to pay the judgment. *Id.* at 339 (citing *Carver v. Sheriff of La Salle County*, 787 N.E.2d. 127, 141 (Ill. 2003)). Working from this principle of state law, the Seventh Circuit has decided that a county is a necessary party in any case against an elected county official or against the county court. *Carver v. Sheriff of LaSalle County, Illinois,* 324 F.3d 947, 948 (7th Cir.2003) (applying indemnification to judgments against elected officials); *Robinson*, 351 F.3d at 339  (extending the rule to apply to a county circuit court). Because Cook County funds the Office of the Chief Judge for Cook County, it would have been responsible for indemnification. The bottom line, however, is that the County is dismissed from this case because the Probation Department will win its own summary judgment motion.

### B. Probation Department

Before working through the Probation Department's summary judgment motion, it is worth surveying Haag's multiple claims. The Third Amended Complaint is organized into nine claims, some of which encompass multiple legal theories. Compl. ¶¶ 41–146. She claims that various supervisors at the Probation Department discriminated against her because of her race, national origin, and gender, in violation of Title VII; because of her age, in violation of the Age Discrimination in Employment Act (ADEA); and because of her disability, in violation of the Americans with Disabilities Act (ADA). Haag also claims that after she began complaining about her mistreatment, she endured retaliation in violation of these three federal laws.

The Probation Department challenges each claim on substantive grounds and also argues that Haag has waived several claims through defects in her summary judgment filings. R. 163, OCJ Reply at 8, 10, 14, 15, 16, 18. The Court will address each of Haag's claims and, within those analyses, the alleged violations of Local Rule 56.1— although not in precisely the sequence deployed by either party. As it turns out (and as explained in each section below), the Probation Department is correct that Haag's Statement of Material Facts and her brief extensively violate Local Rule 56.1. But the Court will try to reach the merits of the issues whenever reasonably possible. "The decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion," and a district court can appropriately "overlook…technical failures in a motion for summary judgment where the motion provided ample notice of the relevant facts and law." *Stevo v. Frasor*, 662 F.3d 880, 887

13

(7th Cir. 2011) (cleaned up). Viewing the facts in the light most favorable to Haag, she has nevertheless failed to offer facts that would allow a reasonable jury to find in her favor on her discrimination and hostile work environment claims. And she has forfeited her retaliation claims by failing to argue them in her brief. Summary judgment in the Probation Department's favor is therefore warranted on all claims.

### 1. Title VII and ADEA Discrimination

Haag claims that the Probation Department discriminated against her based on her age, race, national origin, and gender, in violation of the ADEA and Title VII. Compl. ¶¶ 63–91, 101–134. The Probation Department argues that she has presented no evidence of discrimination. OCJ Brief at 14, 19. The Seventh Circuit applies the same overall analysis to claims under Title VII and the ADEA. *See David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 225 (7th Cir. 2017); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). A plaintiff seeking to recover for disparate treatment under these statutes must prove at trial, by a preponderance of the evidence, that her age, race, national origin, or gender caused the challenged adverse employment action. *Carson v. Lake County, Indiana*, 865 F.3d 526, 532 (7th Cir. 2017). At the summary judgment stage, all relevant evidence must be considered "as a whole." *Ortiz*, 834 F.3d at 765. As a practical matter, there are two methods of evaluating a plaintiff's claims of discrimination.

First, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the now-familiar *prima facie* framework for evaluating a plaintiff's disparate treatment claims. As an initial step, Haag must establish a *prima facie* case

that the Probation Department discriminated against her based on her race, national origin, gender, or age. *McDonnell*, 411 U.S. at 802. If she can do so, then the burden shifts to the Probation Department to offer a legitimate, nondiscriminatory reason for its actions. *Id.*; *see also Carson*, 865 F.3d at 533. Assuming the Probation Department meets that burden, then Haag must show that the reason is pretext, that is, it is a cover-up of a discriminatory motive. *McDonnell*, 411 U.S. at 804.

The second route past summary judgment is to examine the evidence as a whole. The Seventh Circuit has cautioned against adhering too strictly to any one test or analysis, lest it screen out valid claims of discrimination based on circumstantial evidence that does not fit neatly within a certain framework. *Ortiz*, 834 F.3d at 765. If Haag cannot prevail using the *McDonnell Douglas* test, then she can still defeat summary judgment if she marshals enough circumstantial evidence that a reasonable jury might conclude she faced discrimination. *Id.*; *David*, 846 F.3d at 224.

### a. *Prima Facie* Case

To establish a *prima facie* case of discrimination under *McDonnell Douglas*, Haag must show (viewing the evidence in her favor) that: "(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Carson*, 865 F.3d at 533 (cleaned up). There is no dispute that Haag is a member of a protected case for purposes of race, national origin, and sex discrimination claims. DSOF ¶ 3. Also, she was over 40 years old at the time of the challenged employment decisions,

so she is protected from age discrimination by the ADEA. *Id*. She has cleared the first element of the *prima facie* case.

Skipping ahead for the moment to whether she can show an adverse employment action, the Court concludes that only one of her many proposed employment actions actually qualifies. The "purpose of the adverse employment action requirement is to provide a reasonable limiting principle for the type of conduct actionable under the statute." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). A "cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008) (cleaned up). Similarly, courts consider whether the plaintiff has "been disciplined, demoted, or terminated; has … been denied wage or employee benefit increases or been given less opportunity for such increases; or has … had her job responsibilities reduced or been made to perform more menial tasks." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692 (7th Cir. 2001) (cleaned up). Ultimately, "not everything that makes an employee unhappy is an actionable adverse action." *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Most of Haag's proposed adverse actions can be quickly dispatched. First, Haag points to alleged ongoing bullying by Lisa Stawczyk as an adverse action. R. 157, Pl. Resp. Brief to OCJ (Pl. Resp.) at 17–18, 20. Haag's brief does not cite to her or the OCJ's Statements of Material Fact to support her argument. Having reviewed the

16

parties' Statements of Material Fact anyway, it appears that Haag's accusation of bullying rests on how Stawczyk looked at her. DSOF ¶¶ 35–40.[11] At most, then, Haag has alleged that general hostility emanated from Stawczyk. But "[g]eneral hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). There is simply not enough in the record to establish that Stawczyk harassed or bullied Haag in a way that qualifies as an adverse employment action. What's more, for factual support, Haag's brief does not cite to either party's Statement of Material Fact—or anywhere else in the record. So Haag's assertion that the bullying (even if it qualified as an adverse action) was motivated by discrimination has no factual support.

Next, Haag says that she suffered an adverse action when she was sent home for a half-day on January 13, 2016 (the day of the Stawczyk-Haag confrontation) and lost a half-day of pay. Pl. Resp. at 20. But Haag eventually received this pay. DSOF ¶ 19. This means the pay was not withheld, but delayed, and a delayed payment is generally speaking only an annoyance, not an adverse employment action. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004). Even if she had never received the pay, the loss of a half-day of pay is not significant enough to rise to the level of an adverse employment action. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (holding that even the loss of a *full* day of pay, seen in the context of long-term employment, is not an adverse action), *overruled on other*

---

[11]The Probation Department's investigation did not corroborate Haag's claims of bullying. DSOF ¶¶ 41–44.

*grounds by Ortiz*, 834 F.3d 760. In the absence of any additional facts showing that the delay in payment affected Haag, it cannot qualify as an adverse employment action.

Nor does the record support Haag's contention that she suffered an adverse action when she was docked half an hour of training credit in September 2016. Pl. Resp. at 22. Here again she offers no evidence that she suffered any tangible consequence from this loss of training credit, DSOF ¶¶ 73–74, so it cannot be considered an adverse action. Next, the two reprimands Haag received also do not rise to the level of an adverse employment action, because neither one materially altered the terms of her employment. DSOF ¶¶ 26, 57–58. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009) ("written reprimands without any changes in the terms or conditions of his employment are not adverse employment actions"). Both verbal and written reprimands disappear from an employee's record if she does not commit a similar offense for a set time period. DSOF ¶¶ 24–25. Haag offers no evidence that the reprimands concretely affected her employment.

Haag also seems to argue, in her response brief, that her voluntary leaves of absence were forced by workplace stress and made her lose seniority, and thus should be considered adverse employment actions. Pl. Resp. at 20. But neither party's Statement of Facts refers to Haag's leaves of absence or alleged loss of seniority. Haag's brief (but not Local Rule 56.1 Statement of Facts) cites two pages of her deposition to support this argument. On one page, Haag simply mentions that she took leave several times. R. 147-1, Haag Dep. Pt. 1 at 32:3–11. On the other page, she says, "because

of my situation, I've missed a lot of work due to my condition since this situation has happened, and I have been out of work, one time six weeks, one time three months, one time six months, another time three months." *Id.* 54:6–11. This assertion, with no additional cited testimony or evidence to link Haag's absences to the alleged discrimination (such as matching the leaves to specific events), does not sufficiently support the argument in Haag's brief that her voluntary leaves and consequent loss of seniority should be considered an adverse employment action.

Moving on, Haag also argues that her transfer to the facility at 26th and California was an adverse employment action. Pl. Resp. at 20–21. This is a closer question, but again the evidence falls short, even when viewed in Haag's favor. Generally speaking, a lateral job transfer is not considered an adverse employment action unless the plaintiff can "show something more than the ordinary difficulties associated with a job transfer." *O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004). Haag alleges in her brief that, in April 2016, she was involuntarily transferred from her position as a bilingual probation officer to a "regular" probation officer and lost bilingual pay because of the transfer. Pl. Resp. at 20 (citing Haag Dep. Pt. 1 at 22). If true, then this could support her contention that the transfer was an adverse action. *See Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) ("When overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action."). But in the cited portion of her deposition, Haag does not say she lost any pay, only that she was transferred. *Id.* Nor does the Probation Department's or Haag's Statement of Material Facts

address bilingual pay. Because Haag has failed to offer *evidence* in the record (as distinct from a mere assertion in a response brief) on bilingual pay, she has failed to prove the fact, even for summary judgment purposes.[12] Of course, a "nominally lateral transfer" can still be an adverse action even unaccompanied by a pay cut, if it "significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted." *O'Neal*, 392 F.3d at 911. But again, Haag has not offered evidence of that kind of impact on career prospects. When Haag was transferred to 26th and California, she remained a probation officer just as she had been at Maywood, the only difference being that she was no longer working with Spanish-speakers. DSOF ¶¶ 5, 49; Haag Dep. Pt. 1 at 29:13-30:21. Based on the record evidence, the transfer did not have a negative effect on her career prospects.

Next, in her brief, Haag cites her move to the pretrial services office at 26th and California as an adverse action, allegedly stunting her career. Pl. Resp. at 21–22. Once again this set of facts—the transfer to the pretrial services office—is not addressed in either party's Statement of Material Facts. Indeed, Haag agreed that she was a Probation Officer at "all relevant times" to this lawsuit. DSOF ¶ 4, PSOF ¶ 4. Moreover, Haag's brief cites to her deposition, but the cited sections and

---

[12]The Court's independent review of the record unearthed a bilingual pay provision in the Collective Bargaining Agreement between AFSCME Local Union 3486 and the Office of the Chief Judge. R. 145-25 at 56. But Haag cannot rely on this page of the record without citation or proper foundation. The Court has no way of knowing if that provision of the CBA was in effect during the relevant events, or if it had been amended or replaced. And of course, the Probation Department has not been put on notice that the CBA might be cited for that purpose, so the Defendant has had no chance to rebut or contextualize the evidence.

surrounding content simply describe the duties of a pretrial services officer. Haag Dep. Pt. 1 at 23:14–28:1. Haag's testimony does not state or imply that the pretrial position is less respected or prestigious than her previous positions as a probation officer. *See id.* So this transfer too does not qualify as an adverse employment action.

Haag actually concedes that the actions discussed above would not "normally" count as adverse employment actions. Pl. Resp. at 22.[13] She argues, however, that they should be considered adverse employment actions in *this* case because "the Defendant manipulated known vulnerabilities of Haag and these matters were materially adverse to her." Pl. Resp. at 22–23. In support of this proposition, she cites *Washington v. Illinois Department of Revenue*, 420 F.3d 658 (7th Cir. 2005), although she pinpoint cites to a page number that does not exist in the opinion and provides no supporting quotation. And she gives no other explanation or argument on how the Probation Department "manipulated" Haag's vulnerabilities and how that matches up with *Washington*. In *Washington*, the employee had a known need to care for her son, who had Down syndrome, so that when her working hours were suddenly changed from 7 a.m.–3 p.m. to 9 a.m.–5 p.m., she suffered a predictable and significant harm. *Washington*, 420 F. 3d at 659. The Seventh Circuit discussed the materiality requirement of discriminatory acts under Title VII and concluded that an action (like a two-hour shift in schedule) might not be material for most employees, but

---

[13]It should be noted that Haag cites her job termination in January of 2020 as an adverse employment action. Pl. Resp. at 22, R. 155-1 at 1. Of course a job termination is an adverse employment action. But she never sought to add this claim to the case and fact discovery closed on December 19, 2019, R. 127, 129. So this allegation is beyond the scope of the claims that she presented and need not be addressed.

would be material for others—the change to Washington's schedule being a prime example. *Id.* at 661–62. Here, Haag has not explained how the record supports a similar inference in her favor. So none of the employment actions describe above qualify as a material adverse action.

Haag's suspension without pay, in August 2017, is the only true adverse employment action she suffered. DSOF ¶ 84. The loss of five days' pay is an economic harm and a classic adverse employment action. *Markel v. Board of Regents of University of Wisconsin System*, 276 F.3d 906, 911 (7th Cir. 2002) ("Typically, adverse employment actions are economic injuries such as dismissal, suspension, failure to promote, or diminution in pay."); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("A tangible employment action in most cases inflicts direct economic harm"). The remainder of the analysis thus will focus on the five-day unpaid suspension.

Applying the *prima facie* framework to the five-day suspension, the second and fourth elements of the *prima facie* case will be discussed together, because Haag's assertions about her performance cannot be separated from her assertions about similarly situated employees. The Probation Department argues that Haag was not meeting its legitimate expectations, so the suspension was warranted. OCJ Br. at 15. Generally speaking, an employer's legitimate expectations are simply "bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). Put another way, an employer can reasonably expect employees to adhere to its policies, *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627

F.3d 596, 600 (7th Cir. 2010), so long as the policies are not themselves discriminatory and are enforced even-handedly.

Unfortunately for Haag, her performance deficiencies are well-established in the evidentiary record. She admits that, on January 13, 2016, she engaged in a heated argument with Stawczyk at work, called her (at the least) a "witch," and disobeyed Stawczyk's directive to accompany Stawczyk to her supervisor's office. DSOF ¶¶ 13–17; PSOF ¶¶ 13–17. Haag also was disciplined for well-documented caseload management problems to which she largely admits. DSOF ¶¶ 57–58, 84–85, PSOF ¶¶ 84–85. The Probation Department has demonstrated that Haag was not meeting its legitimate expectations.

In response, Haag argues not that her performance was good, but that she need not demonstrate that she was meeting legitimate expectations. Pl. Resp. at 24. She argues that if a plaintiff's similarly situated coworkers equally fail to meet the employer's expectations, but only the plaintiff is punished, then the plaintiff does not need to demonstrate that she met expectations to establish a *prima facia* case. *Id.* (citing *Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir.2001); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999)). Put another way, Haag argues that her coworkers performed just as poorly as she did without facing similar consequences, so the Probation Department's proffered legitimate performance expectations are not its true expectations.

As a legal principle, Haag is right—if not evenly enforced, then an employer's sporadic expectation is not truly legitimate. As a factual matter, however, Haag has

offered no evidence that similarly situated employees did not face similar discipline. In this case, the analysis actually overlaps with the fourth element of the *prima facie* case, requiring Haag to show that similarly situated employees were treated more favorably than she was. "Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (cleaned up). To satisfy this element, she must identify a comparator who "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). Haag had the burden to identify a comparator who received more favorable treatment than she did. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1311 (7th Cir. 1997). Haag has utterly failed to do so; indeed, her brief devotes less than one page to this vital issue. Pl. Resp. at 24–25.

Most importantly, Haag has not identified a comparator for the one true adverse employment action that she experienced: the five-day suspension without pay for caseload negligence. She *believes* that male colleagues were not disciplined for committing the type of casework errors for which she was suspended. DSOF ¶ 88. But she has zero *evidence* of their disciplinary records. DSOF ¶ 89. Haag also *believes* that the five-day suspension was racially discriminatory because it was meted out by African American supervisors. DSOF ¶ 91. Again, she has no *evidence* of that belief.[14]

---

[14]On her age discrimination claim, Haag believes that *older* employees did not face similar consequences for comparable caseload negligence. DSOF ¶ 90. This is not a valid

24

"Speculation is no substitute for evidence at the summary judgment stage." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). Because her speculation would not be admissible at trial, it cannot be considered in evaluating her *prima facie* case. Fed. R. Civ. P. 56(c)(2). Even if she heard about the discipline from others, those statements would be hearsay (she does not purport to have heard them from anyone who could be deemed to bind the Probation Department). *See Cairel v. Alderden,* 821 F.3d 823, 830 (7th Cir. 2016) ("If the evidence is inadmissible hearsay, the courts may not consider it"). Haag had the duty to "affirmatively demonstrate, by producing evidence that is more than merely colorable, that there is a genuine issue for trial.*" Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (cleaned up). She has not done so.

As discussed earlier, none of the other employment actions offered by Haag rise to the level of an adverse employment action. Even if they did, however, she would be unable to build a *prima facie* case of discrimination because she has not put forth suitable comparators for any of them. For the confrontation on January 13, 2016, Haag apparently believes that Stawczyk is an appropriate comparator because she was not sent home despite being the other party in their argument. DSOF ¶ 28; PSOF ¶ 114; Haag Dep. Pt. 1 at 73:3–74:18; R. 147-2, Haag Dep. Pt. 2 at 5:19–6:9, 13:16–23. Stawczyk and Haag were both supervised by Deputy Chief Rahsaan Moore,

---

claim under the ADEA, which protects employees from discrimination relative to *younger* workers. 29 U.S.C.A. § 621 *et seq*. The Probation Department is also correct that Haag forfeited her age discrimination claims by failing to meaningfully develop them in her brief. R. 163, OCJ Reply at 16; Pl. Resp. at 25.

but the similarities end there. DSOF ¶ 10. Stawczyk had previously been Haag's supervisor, and the difference between them in the workplace hierarchy alone precludes using Stawczyk as a comparator. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009). Also, even evaluating the facts in the light most favorable to Haag, their behavior that day was markedly different. Haag admits to disobeying an order from Stawczyk, flailing her arms, and calling Stawczyk a "witch." PSOF ¶¶ 13–16. Haag alleges that Stawczyk, meanwhile, kept talking to her after she tried to walk away, ordered her to go into an empty office, and walked behind her. *Id.* Those are very different behaviors during the same interaction. The difference is enough to support an employer's decision to impose discipline on one and not the other.

Haag also believes that two male coworkers have not faced discipline for behavior worse than what she did on January 13, 2016, but she has no personal knowledge of their discipline records. DSOF ¶¶ 31–32; PSOF ¶ 101. Haag does not even try to name a similarly situated employee for purposes of her allegedly discriminatory transfer or verbal reprimand. She believes her transfer was discriminatory based on her race and national origin because she does not know of anyone else who was transferred to a location farther from their home. DSOF ¶ 52. Also, she believes that Stawczyk hates women and made the decision to have her transferred, making the transfer discriminatory based on her gender. DSOF ¶ 54. Haag believes that Moore's June 2016 reprimand of her was discriminatory because she does not believe other employees have been reprimanded for similar conduct. DSOF ¶ 59–60. The

problem is that Haag presents no evidence for any of these beliefs. Again, speculation alone cannot defeat a motion for summary judgment.

In sum, Haag has at most offered evidence of one adverse employment action, and failed to establish a *prima facie* case of discrimination given that she did not meet legitimate performance expectations and failed to present a suitable comparator to show she that received unusually unfavorable treatment. Even viewing all evidence in the light most favorable to Haag, she has not established a *prima facie* case of discrimination under the *McDonnell Douglas* framework.

### b. Legitimate, Nondiscriminatory Reason

For completeness' sake, it is worth noting that, even if Haag had successfully built a *prima face* case, the Probation Department would still be entitled to summary judgment. Under the *McDonnell Douglas* framework, after a plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pre-textual." *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (cleaned up). The Probation Department has articulated a legitimate reason for its sole adverse action against Haag. Moore recommended her suspension because "an audit of her entire caseload revealed negligent caseload management that involved DNA collection, assessments, reassessments, filing a violation of probation petition, arrest checks, money being collected, and reporting standards not being met." DSOF ¶ 84. In response, Haag points to one small change that her

supervisor, Althenia Palmer, had to make in the Investigatory Summary Report of Haag's caseload negligence, revising downwards the number of cases (from 33 to 11) in which Haag missed collecting DNA evidence. PSOF ¶ 136. Other than this immaterial point, Haag does not dispute anything else amongst the Probation Department's cited reasons. PSOF ¶ 84. She has created no dispute of material fact undermining the Probation Department's proffered reason for suspending her.

### c. Pretext

Again for completeness' sake only, if Haag had established a *prima facie* case, then she would have to show that the legitimate, nondiscriminatory reason offered by the Probation Department was actually a pretext. *David*, 846 F.3d at 225; *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1005 (7th Cir. 2001). To show pretext, Haag "must demonstrate that the proffered reason is a lie or completely lacks a factual basis"—she cannot merely argue that the presented reasons were "mistaken, ill considered, or foolish." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (cleaned up). Nor, generally speaking, can she show pretext by merely showing the stated reason was unfair. *Zayas v. Rockford Memorial Hosp.*, 740 F.3d 1154, 1158–59 (7th Cir. 2014). In other words, Haag must show that the Probation Department's proffered explanation is "a dishonest explanation, a lie rather than an oddity or an error." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (cleaned up).

What little effort Haag makes to show pretext is unsuccessful. Her vague gestures at other complaints filed against the Office of the Chief Judge, supposedly demonstrating a general discriminatory atmosphere, are irrelevant to the question of

28

whether the Probation Department here, in this case, offered a pretextual reason for the suspension. Pl. Resp. at 28–29. Read generously, her brief elsewhere implies a pretext argument by asserting that other employees did not face the same discipline that she faced despite having committed similar or worse infractions. For the reasons discussed earlier, however, Haag's comparator evidence is far too weak to support a showing of pretext for any of the allegedly adverse actions she suffered. So even had Haag made it past the first step (establishing a *prima facie* case), she would have faltered at the pretext stage.

### d. Cumulative Evidence

Stepping back from the *McDonnell Douglas* test for a moment, the ultimate question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Haag's problem with this overall look at the evidence is that she has not presented direct or circumstantial evidence from which to reasonably infer any discrimination based on her race, national origin, gender, or age. In her brief, Haag argues that the evidence supports her claim, and simply refers the Court back to her other arguments. Pl. Resp. at 23–24. But the Court has already reviewed those arguments and the sparse evidence underlying them, and concluded that they do not support any inferences of discrimination. Because Haag herself has neither presented additional evidence nor reframed her arguments under the

alternative analysis, given the adversarial system of litigation, the Court will not undertake that effort for her. This route past summary judgment is blocked too.

### 2. ADA Claims

Moving on, Haag next claims that she was discriminated against because of her disability, and that the Probation Department failed to accommodate her disability, in violation of the Americans with Disabilities Act (ADA). Compl. ¶¶ 41–52. The analysis for Haag's claims under the ADA differs slightly from the analysis under Title VII and the ADEA. But she faces similar problems building her case under the ADA, and judgment in the Probation Department's favor is appropriate on these claims too.

### a. Intentional Discrimination

To establish a *prima facie* case of employment discrimination under the ADA, Haag must show that: "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (cleaned up). There is no serious dispute over the first or second elements. Haag has alleged she suffers from PTSD and other mental health issues, and the Probation Department has admitted that the Human Resources department had documentation of these issues. PSOF ¶ 123; Def. Repl. PSOF ¶ 123. As pertinent here, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The Court

30

accepts Haag's representations that her PTSD, anxiety, and depression substantially limit her life activities and constitute a disability. DSOF ¶ 97, PSOF ¶¶ 123, 141. There is no dispute in the record over Haag's qualification to perform her former job at the Probation Department.

Haag cannot show, however, that she suffered an adverse employment action *because of* her disability. As discussed above, the only adverse employment action she suffered was her suspension for five days in August 2017. Haag believes that her supervisors ordered her to bring her cases into compliance, and disciplined her for caseload negligence, because they knew about her disability. DSOF ¶ 87. But she presents no evidence to support this belief. Haag's disability was never mentioned in any disciplinary documents or by supervisors during her disciplinary proceedings. DSOF ¶¶ 95–96, PSOF ¶¶ 95–96. Deputy Chief Darryl Gray, who recommended the suspension, did not even know about her disability. PSOF ¶ 139. Moreover, as discussed earlier, Haag was disciplined for violating department case management procedures. DSOF ¶ 84. Even if her mental health issues contributed to these violations, discipline would still have been appropriate and nondiscriminatory. *Guzman v. Brown County*, 884 F.3d 633, 642 (7th Cir. 2018) (explaining that "violation of a workplace rule, even if it is caused by a disability, is no defense to discipline up to and including termination") (cleaned up). Her claim of direct discrimination under the ADA cannot succeed.

### b. Failure to Accommodate

The ADA requires employers to "reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on the employer." *Weiler v. House-hold Fin. Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (citing 42 U.S.C. § 12112(b)(5)(A)). To move forward with the failure-to-accommodate claim, Haag must show that "(1) she is a qualified individual with a disability; (2) [her employer] was aware of her disability; and (3) [her employer] failed to reasonably accommodate that disability." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009) (cleaned up).

The Probation Department argues that Haag cannot show that it failed to reasonably accommodate her because (1) her requests for accommodation were not reasonable and (2) the Probation Department reasonably tried to engage with Haag to address her concerns. OCJ Brief at 22–24. In her response brief, Haag argues only that Probation Department denied her reasonable requests (1) not to work evenings with Stawczyk and (2) to change her work schedule to minimize time with Stawczyk. Pl. Resp. at 27–28. But Haag does not cite to either side's Statement of Material Facts to provide evidence for these propositions. Haag does cite an email exchange with supervisors on January 29, 2016, in which she asks to change her start time—but without citing mental health concerns. R. 155-1,Exh. 8, Haag Email Regarding Schedule, at ECF 47. Without more evidence about this request, no reasonable jury could link it to her disability. And Haag does not cite to the record at all (not even

solely in the response brief) for her request not to work evenings. Haag has failed to present evidence to support the reasonable-accommodation claim.

It is worth noting, however, that the record actually supports the Probation Department's responses to Haag. When Haag raised concerns explicitly linked to her mental health, the Probation Department tried to accommodate her. On March 29, 2016, Haag sent an email asking to be reassigned, or for Stawczyk to be reassigned, so that they would have little contact. R. 155-1, Exh. 10, Haag Email Requesting Reassignment at ECF 54. The Probation Department contends that this is not a reasonable request, but in any event, the record shows that the Department nevertheless tried to honor it. Specifically, on April 4 (just one week after the request was made), despite having found insufficient evidence to corroborate Haag's allegation that Stawczyk was bullying her, the Department notified Haag that "due to your medical issues and to prevent you from any further anxiety or stress in the workplace, you will be relocated to an assignment and facility where there is an immediate operational need." R. 145-14, Memo from Raymond to Haag, at ECF 2. Haag requested a transfer to a facility at Bridgeview, but she did not have the seniority that would permit that transfer. DSOF ¶ 46. The Probation Department then offered a transfer to Rolling Meadows, but Haag turned it down. *Id.* Finally, the Department transferred Haag, in response to her request, to 26th and California. *Id.* ¶ 49. Even when required to transfer an employee as a reasonable accommodation, an employer generally need only transfer her to already-open positions. *Weiler.*, 101 F.3d at 526. The record shows the Probation Department did just that.

After the transfer, Haag asked the Probation Department to ensure that she and Stawczyk would not attend the same training sessions. Here too the Department made reasonable efforts to accommodate this request, with the result that Haag saw Stawczyk only once more in the course of Haag's employment. DSOF ¶¶ 65–69. Haag's request included a note from her medical provider, and the Department promptly responded that they would try to honor her request though it would be impossible to guarantee zero contact. *Id.* ¶¶ 65–66. There is nothing in the record to suggest that Haag responded to this communication. Indeed, because the medical note Haag submitted requested only the *minimization* of contact, it is hard to see this accommodation as anything but responsive. R. 147-6 at 2.[15]

In both these instances, Haag requested an accommodation and received one. That she did not receive what she believed to be the ideal outcome does not mean that the Probation Department failed to accommodate her. "An employer is not obligated to provide an employee the accommodation she requests or prefers, the employer need only provide some reasonable accommodation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008) (cleaned up).

In sum, Haag has not presented evidence, even when viewed in her favor, that would allow a reasonable jury to find in her favor on the reasonable-accommodation claims. The Probation Department wins summary judgment against those claims.

---

[15]The letter from Haag's doctor was submitted under seal, but summarized, slightly inaccurately, in DSOF ¶ 65. In any case, it does not meet the Seventh Circuit's stringent requirements for sealing court submissions, so the Court refers to the described contents publicly. *See supra* at 1 n.3.

### 3. Hostile Work Environment

Haag also alleges that she was subjected to a hostile work environment in violation of Title VII, suffering harassment based on her race, national origin, and gender. Compl. ¶¶ 120, 130.[16] To defeat the Probation Department's motion for summary judgment, Haag must show that: "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class …; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (cleaned up). In evaluating whether a work environment was hostile, the court will consider all the surrounding circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018). Even "conduct that is not particularly severe but that is an incessant part of the workplace environment may, in the end, be pervasive enough and corrosive enough that it meets the standard for liability." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007).

Haag mostly hinges the hostile-environment claim on Stawcyzk's alleged bullying. Pl. Resp. at 11–18. She alleges that Stawczyk "scolded" Haag and spoke with other employees about Haag within her earshot, and that this frightened her. Pl. Resp

---

[16]The parties' briefs address a potential hostile work environment claim based on Haag's disability, and it fails for the same reasons as her the Title VII hostile work environment claims. It is worth noting that the hostile work environment claim based on disability does not appear in the operative complaint.

at 17. Again, Haag's brief does not cite to a Statement of Material Facts for these factual assertions. Earlier in the brief, she cites to her deposition for a description of Stawczyk scolding her for her tone when speaking in Spanish on the phones. *Id.* at 15 (citing Haag Dep. Pt. 1 at 99–100). It is unclear if this happened more than once, but even if it did, that type of scolding is not severe enough to create a hostile work environment. Haag also has not alleged any physical threats or particularly frequent harassment. Nor can the reprimands that Moore issued to Haag for documented, admitted misconduct be considered part of a hostile work environment. DSOF ¶¶ 26, 57–58. Even viewed in Haag's favor, the evidence does not support an objectively hostile work environment.

Even if the Department's actions were sufficiently serious, Haag's claim still would fail because she has presented no evidence to link any of the alleged harassment to her race, national origin, gender, or disability. Again, she expresses her opinion that Stawczyk hates women, and that Stawczyk discriminated against her for being Puerto Rican. But as discussed earlier in this Opinion, Haag has not backed this up with any admissible evidence. At this stage of the litigation, she needs evidence, not a feeling or an opinion. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). Because Haag has not offered record evidence showing that she faced a hostile work environment, there is no need to explore the question of employer liability. The hostile work environment claim is dismissed.

#### 4. Retaliation

Finally, Haag has forfeited the retaliation claims by failing to develop them. She simply invites the Court to adapt her arguments about direct discrimination to the retaliation claim and review the record, including her 250-plus page deposition, for supporting facts. Pl. Resp. at 28. No. That was a job for Haag's lawyer. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. ... Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (cleaned up). The retaliation claims are dismissed.

### IV. Conclusion

The Office of the Chief Judge's summary judgment motion is granted; Cook County's motion is terminated as unnecessary because it is only in the case for indemnification; and the case is dismissed in full. The tracking status hearing scheduled for April 16, 2021, is vacated. Final judgment will be entered.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2021